UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KATHERYN MOSES,<br><br>        Plaintiff,<br><br>    v.<br><br>AEROTEK, INC., a Maryland corporation,<br><br>        Defendant. | Case No.  17-cv-06251-BLF<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Re:  ECF 35] |

Following the termination of her employment by Defendant Aerotek, Inc., Plaintiff Katheryn Moses filed the present action for retaliation, failure to prevent retaliation, and failure to prevent harassment in violation of California's Fair Employment and Housing Act ("FEHA"), and failure to provide records in violation California's Labor Code.  Aerotek seeks partial summary judgment with respect to Moses' FEHA claims and her claim for punitive damages.

The motion is DENIED for the reasons discussed below.

## I.    FACTUAL BACKGROUND

Aerotek is a staffing company that places workers in positions at numerous companies.  In September 2014, Aerotek hired Moses as a Recruiter in its San Jose office.  *See* Moses Dep. 281:19-282:8, Baysinger Decl. Exh. 1, ECF 38-1.  Approximately one year later, in October 2015, she was promoted to the position of Account Manager.  *See id.* 291:21-24.  In December 2016, Moses achieved a "contest win," which is a term used at Aerotek to mean "a benchmark established for employees to earn bonuses and an incentive trip."  *See id.* 68:15-28; Lane Dep. 82:15-21, Baysinger Decl. Exh. 2, ECF 38-2.  The contest win entitled Moses to go on a company

1   trip to Cancun, Mexico in January or February 2017.  *See* Moses Dep. 26:16-27:6, 146:3-7,

2   Baysinger Decl. Exh. 1, ECF 38-1.  Moses did not get to take the trip, however, because her

3   employment was terminated on January 25, 2017.  *See* Moses Dep. 90:6-7, 146:4-7, Smith Decl.

4   Exh. B, ECF 35-3.  The parties dispute the circumstances of, and reasons for, her termination.

5   Moses claims that she was terminated in retaliation for reporting the inappropriate conduct of a

6   senior employee at the San Jose office, Onyeka Ossai.  Aerotek claims that Moses was terminated

7   for performance issues, including interviewing with other companies during Aerotek work hours.

8              *Moses' Relationship with Ossai*

9              According to Moses, Ossai pursued her and had a sexual relationship with her without

10   disclosing that he was also dating another Aerotek employee named Michelle Sanchez.  *See* Moses

11   Dep. 162:3-165:23, 166:22-167:7, 372:1-6, Baysinger Decl. Exh. 1, ECF 38-1.  Although Ossai

12   did not directly supervise Moses, she considered him a superior because he was a senior manager.

13   *See id*. 367:16-18.  Moses stated that at the time she did not view Ossai's attention as harassment,

14   stating, "I mean, I was like 22, 23 years old.  I don't think I knew what even that meant, other than

15   he was just a senior person in the office and was interested in me."  *Id.* 371:1-4.  Moses testified

16   that she and Ossai began a sexual relationship in April or May of 2015, and that they had sex two

17   or three times at his home and at the home of one of his friends.  *See id.* 163:24-164:8, 166:22-

18   167:7, 372:1-6.  Ossai was on Moses' interview panel when she was promoted to the position of

19   Account Manager in October 2015, after the two had sex.  *See id.* 296:4-16, 367:17-23.

20              Moses testified that her relationship with Ossai ended in September 2016, when she

21   encountered him and Sanchez at a San Francisco club.  *See* Moses Dep. 167:8-168:25, Baysinger

22   Decl. Exh. 1, ECF 38-1.  Moses was at the club with friends and family, celebrating her birthday,

23   and she had invited Ossai to attend her party.  *See id.* 167:8-24.  It is unclear whether Ossai knew

24   that Moses' party was happening at that particular club when he arrived with Sanchez, or whether

25   the meeting was happenstance.  Moses felt humiliated, because she thought she and Ossai were in

26   a relationship.  *See id*. 387:8-25.

27              Ossai claims that he and Moses had a single romantic encounter in April 2015.  Ossai Dep.

28   34:1-10, Baysinger Decl. Exh. 5, ECF 38-5.  Scott Lane, the Director of Business Operations for

United States District Court
Northern District of California

2

1   Aerotek's San Jose Office, testified that Ossai told him the two had "hooked up a couple times,"

2   Moses wanted more, and Ossai let her know he was not interested.  Lane Dep. 102:10-22, Smith

3   Decl. Exh. C, ECF 135-4.

4          *December 21, 2016 Incident*

5          Lane hosted a company event on December 21, 2016.  *See* Moses Dep. 30:2-6, Baysinger

6   Decl. Exh. 1, ECF 38-1.  The event was a bicycle tour of bars in San Jose.  *See id.* 30:2-31:20.

7   The bicycle tour started at approximately noon, and after several stops at different bars the

8   participants ended up at San Pedro Market in San Jose in the early evening.  *See id.*  Sanchez had

9   left Aerotek, and did not attend the bicycle tour, but she joined Ossai at San Pedro Market

10  afterward.  *See id.* 34:4-9.  Upon seeing Sanchez, Moses decided to "clear the air," and went to

11  speak with her.  *Id.* 26:16-27:10.  Ossai responded by confronting Moses and engaging in a loud

12  argument with her.  *See id.* 27:16-28:5, 136:3-137:24.  Moses claims that Ossai pushed her hard

13  enough that she might have fallen if others hadn't been there to help her.  *See id.* 137:19-11.

14  Moses went home in a Lyft or Uber car.  *See id.* 139:7-14.  During the car ride home, Moses called

15  Lane.  *See id.* 129:16-130:2, 140:11-15.  Moses told Lane that there had been "an inappropriate

16  relationship" between herself and Ossai, there had been an incident that evening during which

17  Ossai put his hands on her, and she was very upset.  *See id.* 130:3-10.  Lane told Moses to stay

18  home the next day, and since Moses was scheduled to be out for the holidays starting on

19  December 23, 2016, she did not return to the office until January 2017.  *See id.* 359:3-6.

20         *Lane Fails to Initiate a Formal Investigation*

21         Lane called Ossai on December 22, 2016 to tell him about Moses' call and get his side of

22  the story.  Lane Dep. 101:3-11, Smith Decl. Exh. C, ECF 35-4.  Lane told Ossai that Moses was

23  "pretty hysterical and intoxicated" during the call.  *See id.*  Ossai admitted to confronting Moses

24  but denied pushing her.  *See id.* 101:12-102:1.  Lane was scheduled to be off work for the next two

25  weeks, so he did not speak with Ossai or Moses again until January 2017.  *See id.* 99:19-100:11.

26         Once Lane, Moses, and Ossai returned to the office in January 2017, Lane urged Moses to

27  sit down with Ossai and "work it out."  Moses Dep. 146:11-147:2, Baysinger Decl. Exh. 1, ECF

28  38-1.  Moses refused.  *See id.* 147:3-5.  A week later, Lane again tried to get Moses to sit down

United States District Court
Northern District of California

3

1    with Ossai, and when Moses said she did not feel comfortable being in a room with Ossai, Lane

2    stated that he had no further advice for Moses and was "at a loss as to what to do." *Id.* 152:12-14.

3    Lane suggested that Moses reach out to Sheila Simmons in Aerotek's Human Resources

4    department. *See id.* 152:12-24.  Simmons was the Human Resources Manager for the Northwest

5    Region, which includes San Jose. *See* Simmons Dep. 20:8-21, Smith Decl. Exh. E, ECF 35-6.

6                   *Simmons Begins a Formal Investigation on January 19, 2021*

7            Lane himself contacted Simmons to ask for guidance on how to proceed.  *See* Lane Dep.

8    132:1-13, Smith Decl. Exh. C, ECF 35-4.  Simmons' notes indicate that Lane called her on

9    January 19, 2017.  *See* Simmons' Notes, Smith Decl. Exh. H, ECF 35-9.  Simmons' notes also

10   indicate that as of January 19, 2017, Lane had not formally addressed the matter with either Moses

11   or Ossai.  *See id.*  Simmons told Lane that she was opening a formal investigation.  *See* Simmons

12   Dep. 60:17-23, Smith Decl. Exh. E, ECF 35-6.  Simmons also immediately reported the situation

13   to Aerotek's Regional Vice President, Eric Bowen.  *See id.* 54:7-17.

14           Bowen reprimanded Lane for his handling of Moses' complaint.  Lane Dep. 137:17-23,

15   Baysinger Decl. Exh. 2, ECF 38-2.  Bowen warned Lane that if a similar incident were to arise in

16   the future, Lane's job could be at risk if he did not report it sooner.  *See id.*

17           Moses and Simmons spoke on January 19, 2017, after Lane had called Simmons.  *See*

18   Simmons' Notes, Smith Decl. Exh. H, ECF 35-9.  Moses disclosed her sexual relationship with

19   Ossai and indicated that she had not known Ossai also was dating someone else from the office.

20   *See* Moses Dep. 162:1-24, Baysinger Decl. Exh. 1, ECF 38-1.

21           Simmons' notes reflect that she spoke with eight individuals in the course of her

22   investigation.  *See* Simmons' Notes, Smith Decl. Exh. H, ECF 35-9.  It appears that much of

23   Simmons' investigation was focused on Moses' conduct unrelated to the December 21, 2016

24   incident, including Moses' attire and conduct at a different company party, Moses' absences from

25   work, and Moses' interviews at other companies.  *See id.*  Simmons' notes do not reflect that she

26   interviewed Ossai.  *See id.*  Simmons testified that she did speak with Ossai, but that their

27   discussion of the December 21, 2016 incident was limited to Simmons asking whether he put his

28   hands on Moses.  *See* Simmons Dep. 90:16-25, Baysinger Decl. Exh. 6, ECF 38-6.  When

United States District Court
Northern District of California

4

1    Simmons asked Ossai about his relationship with Moses, he was evasive.  *See id.* 91:3-13.

2    Simmons did not ask Ossai about his relationship with Sanchez.  *See id.* 95:3-6.

3                *Moses is Written Up on January 20, 2017*

4         On January 20, 2017, Lane presented Moses with a "Counseling Form," a disciplinary

5    write-up for engaging in a sexual relationship with a co-worker in violation of Aerotek policy.  *See*

6    Counseling Form, Smith Decl. Exh. I, ECF 35-10; Moses Dep. 315:3-7, Baysinger Decl. Exh. 1,

7    38-1.  Moses testified that when Lane gave her the form, he was angry.  *See* Moses Dep. 195:2-

8    197:7.  Lane told Moses that her complaint could have serious implications for Ossai's career, that

9    Ossai would have to meet with the Regional Vice President, Eric Bowen, and that Ossai might not

10   get promoted.  *See id.*

11               *Moses is Fired on January 25, 2017*

12        Moses was terminated on January 25, 2017.  *See* Moses Dep. 90:6-7, Smith Decl. Exh. B,

13   ECF 35-3.  Aerotek asserts that the termination was based on performance issues, including

14   Moses' conduct in interviewing with other companies during Aerotek work hours.  Moses

15   contends that she was terminated in retaliation for her complaint about Ossai.

16               *DFEH Complaint and Present Action*

17        Moses filed a DFEH complaint on June 2, 2017.  *See* DFEH Compl., Smith Decl. Exh. L,

18   ECF 35-13.  She filed the present action in the Santa Clara County Superior Court on September

19   1, 2017.  *See* Not. of Removal Exh. A (Compl.), ECF 1.  Aerotek removed the action to federal

20   district court on October 27, 2017.  *See* Not. of Removal, ECF 1.  The complaint contains claims

21   for:  (1) retaliation in violation of FEHA; (2) failure to prevent harassment and retaliation in

22   violation of FEHA; (3) failure to timely furnish payroll records in violation of California Labor

23   Code § 226; and (4) failure to timely furnish personnel records in violation of California Labor

24   Code § 1198.5.  *See* Not. of Removal Exh. A (Compl.), ECF 1.

25   **II.    LEGAL STANDARD**

26        "A party is entitled to summary judgment if the 'movant shows that there is no genuine

27   dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *City of*

28   *Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ.

United States District Court
Northern District of California

P. 56(a)).  "The moving party initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial."  *Id*.  "[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor."  *Id*.  "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor."  *City of Pomona*, 750 F.3d at 1049.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Id*. (internal quotation marks and citation omitted).

## III.   DISCUSSION

Aerotek seeks summary judgment on Claim 1 for retaliation in violation of FEHA and Claim 2 for failure to prevent harassment and retaliation in violation of FEHA.  Aerotek also seeks summary judgment on Moses' claim for punitive damages.

In opposition, Moses clarifies that she is not asserting a claim for harassment or failure to prevent harassment, and that her FEHA claims are limited to retaliation and failure to prevent retaliation.  *See* Opp. at 3, ECF 37.  Moses also clarifies that she is not seeking recovery for any conduct not alleged in her DFEH complaint, or for any conduct that occurred more than one year before she filed her DFEH complaint.  *See id.*

Aerotek contends that Moses' FEHA claims fail because she was fired for legitimate, non-retaliatory reasons, and that her punitive damages claim fails because there is no evidence of oppression, fraud, or malice by a managing agent of Aerotek.  Moses argues that Aerotek's proffered reasons for termination are a pretext for retaliation and that there are disputed facts regarding Aerotek's motivation.  Moses also argues that there are disputed facts as to oppression, fraud, or malice by a managing agent of Aerotek.

Before turning to the parties' arguments on these points, the Court addresses two evidentiary objections raised in Moses' opposition brief.  First, Moses objects to the witness statements memorialized in Simmons' investigative notes to the extent offered for the truth of the

1    matters asserted by the witnesses.  That objection is SUSTAINED.  *See* Fed. R. Evid. 801-02;

2    *United States v. Reyes*, 239 F.R.D. 591, 600 (N.D. Cal. 2006) (summaries, notes and memoranda

3    related to the interviews of employees were inadmissible hearsay).  While the Court does rely on

4    Simmons' notes to show the scope of her investigation, the notes are not admissible for the truth

5    of the matters asserted by the witnesses.  Second, Moses objects to Lane's testimony regarding

6    what witnesses to the December 21, 2016 incident told him they observed.  That objection is

7    SUSTAINED on the basis that the testimony is inadmissible hearsay.  *See* Fed. R. Evid. 801-02.

8           **A.      FEHA Claims**

9                  As noted above, Moses asserts two claims under FEHA, retaliation and failure to prevent

10   retaliation.  The Court addresses those claims in turn.

11                      **1.       Claim 1 for Retaliation in Violation of FEHA**

12                  Claim 1 asserts that Aerotek terminated Moses in retaliation for her reporting regarding

13   Ossai, in violation of FEHA.  California Government Code § 12940(h) makes it unlawful "[f]or

14   any employer, labor organization, employment agency, or person to discharge, expel, or otherwise

15   discriminate against any person because the person has opposed any practices forbidden under this

16   part or because the person has filed a complaint, testified, or assisted in any proceeding under this

17   part."  Cal. Gov't Code § 12940(h).

18                  A FEHA claim may be evaluated using the burden-shifting analysis applied to Title VII

19   cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Yanowitz v. L'Oreal USA,*

20   *Inc.*, 36 Cal. 4th 1028, 1042 (2005).  At step one of the analysis, the plaintiff must make out a

21   *prima facie* case of retaliation.  *See id.*  "Once an employee establishes a prima facie case, the

22   employer is required to offer a legitimate, nonretaliatory reason for the adverse employment

23   action."  *Id.*  "If the employer produces a legitimate reason for the adverse employment action, the

24   presumption of retaliation drops out of the picture, and the burden shifts back to the employee to

25   prove intentional retaliation."  *Id.* (quotation marks and citation omitted).

26                      **a.      *Prima Facie* Case**

27                  "[I]n order to establish a prima facie case of retaliation under the FEHA, a plaintiff must

28   show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an

1    adverse employment action, and (3) a causal link existed between the protected activity and the

2    employer's action." *Yanowitz*, 36 Cal. 4th at 1042.

3        Aerotek contends that Moses cannot establish a *prima facie* case of retaliation because she

4    did not engage in protected conduct. "The statutory language of section 12940(h) indicates that

5    protected conduct can take many forms." *Yanowitz*, 36 Cal. 4th at 1042. "Specifically, section

6    12940(h) makes it an unlawful employment practice '[f]or any employer . . . to discharge, expel,

7    or otherwise discriminate against any person because the person has opposed any practices

8    forbidden under this part or because the person has filed a complaint, testified, or assisted in any

9    proceeding under this part.'" *Id.* (quoting Cal. Gov't Code § 12940(h)). Applying this standard,

10   the question is whether Moses' reporting regarding Ossai constituted reporting of "any practices

11   forbidden under this part," that is, practices forbidden by FEHA.

12       Aerotek asserts that the answer to this question is no, arguing that Moses' reporting related

13   only to "a heated argument between two previously romantic individuals." Mot. at 16, ECF 35.

14   The Court does not find Aerotek's argument persuasive. As discussed above, Moses reported to

15   both Lane and Simmons that a senior employee had engaged in sexual relationships with at least

16   two employees junior to him, including Moses; the December 21, 2016 incident arose out of those

17   relationships; and Moses felt uncomfortable around Ossai after the incident. Lane and Simmons

18   discussed that one of the reasons for Aerotek's anti-dating policy was the recognition that dating

19   in the workplace could give rise to harassment claims. *See* Lane Dep. 42:16-43:14, Baysinger

20   Decl. Exh. 2, ECF 38-2. Ossai's comments to Moses on December 21, 2016 went directly to her

21   sexuality, as by his own admission Ossai called Moses a "lying bitch" and said she "was just mad

22   because nobody wanted her." Ossai Dep. 68:16-18, Baysinger Decl. Exh. 5, ECF 38-5.

23       Based on this record, the Court finds that Moses reasonably could have believed she was

24   reporting discriminatory or harassing conduct within the meaning of FEHA. "[A]n employee's

25   conduct may constitute protected activity for purposes of the antiretaliation provision of the FEHA

26   not only when the employee opposes conduct that ultimately is determined to be unlawfully

27   discriminatory under the FEHA, but also when the employee opposes conduct that the employee

28   reasonably and in good faith believes to be discriminatory, whether or not the challenged conduct

United States District Court
Northern District of California

8

is ultimately found to violate the FEHA."  *Yanowitz*, 36 Cal. 4th at 1043.  Thus, for purposes of establishing a *prima facie* case of retaliation, Moses has presented sufficient evidence to show that she engaged in protected activity.

Aerotek does not challenge the remaining elements of a *prima facie* case, adverse employment action and causal link.  Moreover, Moses has presented evidence sufficient to satisfy those elements.  There is no dispute that Moses was terminated and that termination is an adverse employment action under FEHA.  *See McCoy v. Pac. Mar. Assn.*, 216 Cal. App. 4th 283, 299 (2013) (FEHA protects against "ultimate employment actions such as termination" (quotation marks and citation omitted)).  Evidence of a causal link between Moses' reporting and her termination includes Moses' testimony that Lane told her he was angry about her complaint and that the complaint threatened Ossai's career, *see* Moses Dep. 195:2-197:7, and the temporal proximity between Moses' reporting and her termination.

Aerotek's motion for summary judgment on the ground that Moses cannot make out a *prima facie* case of retaliation is DENIED.

### b.     Legitimate, Non-Retaliatory Reason

The burden thus shifts to Aerotek to articulate a legitimate, non-retaliatory reason for Moses' termination.  Aerotek claims that Lane terminated Moses because her performance was unsatisfactory, she was interviewing for other jobs during work hours, and she was not truthful when confronted about interviewing.  Lane testified at his deposition that he had concerns about Moses' performance dating back to April or July 2016 and that Moses consistently missed the morning office meetings.  Lane Dep. 61:15-67:21, Smith Decl. Exh. C, ECF 35-4.  Lane also stated that he discovered that Moses had interviewed at Facebook in November 2016 when she was supposed to be meeting with a customer.  *See id.* 83:24-84:6.  According to Lane, Moses lied about the Facebook interview when confronted.  *See id.* 88:15-90:10.  Lane says that he warned Moses that if she interviewed with another company when she was supposed to be with a client, she would be terminated.  *See id.* 90:18-25.  Lane later was informed that Moses was interviewing with Uber when she was supposed to be at client meetings.  *See id.* 155:1-10.  Lane testified that he terminated Moses because he felt that he could not trust her, because of her absenteeism, and

United States District Court
Northern District of California

1   because of performance issues.  *See id.* 157:17-21.

2       Lane's testimony is sufficient to meet Aerotek's burden to articulate a legitimate, non-

3   discriminatory reason for the termination.  Aerotek also submits Simmons' testimony, as Simmons

4   consulted with Lane about Moses' termination.  *See* Simmons Dep. 152:16-153:15, Smith Decl.

5   Exh. E, ECF 35-6.

6                       **c.       Pretext**

7       The burden thus shifts back to Moses to present evidence that Aerotek's proffered reasons

8   for her termination were pretextual, and that actually she was terminated in retaliation for

9   reporting against Ossai.  Moses presents substantial evidence from which a finder of fact conclude

10  that Aerotek's reasons were pretextual.

11      First, although Lane testified that he had concerns about Moses' performance dating back

12  to mid-2016, none of those concerns were documented prior to 2017.  *See* Lane Dep. 64:12-17,

13  67:14-21, 17-2-9.  In fact, Moses achieved a contest win in December 2016, meaning that she had

14  hit a company benchmark that entitled her to a trip to Cancun.  *See* Lane Dep. 82:15-21, Baysinger

15  Decl. Exh. 2, ECF 38-2; Moses Dep. 26:16-27:6, 146:3-7, Baysinger Decl. Exh. 1, ECF 38-1.  The

16  lack of documentation and the concrete evidence that Moses had hit "contest" undermine Lane's

17  assertion that Moses was having performance issues.

18      With respect to Lane's testimony that he could not trust Moses in light of her interviewing

19  activities, Lane admitted during his deposition that it was common for Aerotek employees to

20  interview with other companies, and that he had never terminated another employee for interview-

21  related activities.  *See* Lane Dep. 85:6-22, Smith Decl. Exh. C, ECF 35-4.

22      Moreover, Lane failed to open a formal inquiry when Moses informed him of her prior

23  sexual relationship with Ossai and his conduct on December 21, 2016.  To the contrary, Lane

24  repeatedly asked Moses to sit down with Ossai and make nice.  Moses Dep. 146:11-152:3,

25  Baysinger Decl. Exh. 1, ECF 38-1.  It was only after Moses refused to do so that Lane called

26  Simmons in Human Resources.  *See* Lane Dep. 132:1-13, Smith Decl. Exh. C, ECF 35-4.  Moses

27  testified that after Simmons opened the inquiry, Lane was angry with her, and on January 20, 2017

28  he expressed his concern about how the inquiry might impact Ossai's career.  *See* Moses Dep.

1    195:2-197:7, Baysinger Decl. Exh. 1, ECF 38-1.  Lane fired Moses only days later, on January 25,

2    2017.  *See* Moses Dep. 90:6-7, 146:4-7, Smith Decl. Exh. B, ECF 35-3.

3        The Court concludes that this evidence creates a factual dispute as to the motivation for

4    terminating Moses.  In particular, the Court finds that a trier of fact could conclude that Lane had a

5    retaliatory animus based on the lack of documentation regarding Moses's asserted performance

6    deficiencies in 2016, her demonstrable success in 2016 based on her contest win, Lane's

7    admission that he had never terminated another employee for interview-related activities, evidence

8    that Lane was angry at Moses for jeopardizing Ossai's career, and the temporal proximity between

9    Moses' reporting and her termination.

10       Aerotek's motion for summary judgment on Claim 1 for retaliation in violation of FEHA is

11   DENIED.

12                    **2.    Claim 2 for Failure to Prevent Retaliation in Violation of FEHA**

13       As limited by Moses' opposition brief, Claim 2 asserts that Aerotek failed to prevent

14   retaliation in violation of FEHA.  California Government Code § 12940(k) makes it an unlawful

15   employment practice for an employer "to fail to take all reasonable steps necessary to prevent

16   discrimination and harassment from occurring."  Cal. Gov't Code § 12940(k).  Courts have

17   interpreted this provision to provide a claim against an employer for failure to prevent

18   discrimination, harassment, or retaliation.  *See Hicks v. Netflix, Inc.*, 472 F. Supp. 3d 763, 772

19   (C.D. Cal. 2020).  The elements of the claim are:  "(1) that the plaintiff was subjected to

20   discrimination, harassment, *or retaliation*; (2) that the defendant failed to take all reasonable steps

21   to prevent discrimination, harassment, *or retaliation*; and (3) that this failure caused the plaintiff to

22   suffer injury, damage, loss, or harm."  *Id.* (emphasis in original).  An employer cannot be held

23   liable for failure to prevent unlawful conduct under FEHA where no such conduct occurred.  *See*

24   *Dickson v. Burke Williams, Inc.*, 234 Cal. App. 4th 1307, 1318 (2015) ("There cannot be a claim

25   for failure to take reasonable steps necessary to prevent sex discrimination under section 12940,

26   subdivision (k) if actionable sex discrimination has not been found.").

27       Aerotek contends that because it has demonstrated that no unlawful retaliation occurred, it

28   cannot be held liable for failure to prevent such retaliation.  As discussed above, there are disputed

United States District Court
Northern District of California

11

facts that preclude summary judgment on Moses' claim for retaliation in violation of FEHA. Accordingly, this argument is without merit.

Aerotek also contends that it cannot be held liable because it had adequate anti-retaliation policies and complaint mechanisms.  In support of that argument, Aerotek cites to Simmons' testimony regarding its policies regarding retaliation and procedures for making and investigating complaints.  *See* Simmons Dep. 30:10-31:25, Smith Decl. Exh. E, ECF 35-6.  Aerotek argues that the policies worked in this case, because Simmons did open an investigation and after she did so there were no further incidents between Moses and Ossai.  Aerotek's arguments ignore the fact that Lane failed to open a formal inquiry when Moses reported to him about Ossai, and that there are disputed issues as to whether Lane retaliated against Moses for that reporting by firing her. Aerotek's evidence is simply insufficient to meet its initial burden on summary judgment to establish that it "took all reasonable steps" to protect Moses from retaliation.

Aerotek's motion for summary judgment on Claim 2 for failure to prevent retaliation in violation of FEHA is DENIED.

### B.     Punitive Damages

Moses seeks punitive damages based on Aerotek's alleged FEHA violations.  California law provides that, "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."  Cal. Civ. Code § 3294(b).  Where punitive damages are sought against a corporate employer such as Aerotek, the culpable conduct "must be on the part of an officer, director, or managing agent of the corporation."  *Id.*

Aerotek contends that Moses cannot recover punitive damages in this case, because she cannot establish culpable conduct on the part of an officer, director, or managing agent.  In opposition, Moses argues that both Lane and Simmons qualify as "managing agents" under the statute such that punitive damages may be imposed on Aerotek.

The California Supreme Court has held that "the Legislature intended the term 'managing agent' to include only those corporate employees who exercise substantial independent authority

and judgment in their corporate decisionmaking so that their decisions ultimately determine corporate policy." *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 566-67 (1999).  "[S]upervisors who have broad discretionary powers and exercise substantial discretionary authority in the corporation could be managing agents." *Id.* at 577.  "Conversely, supervisors who have no discretionary authority over decisions that ultimately determine corporate policy would not be considered managing agents even though they may have the ability to hire or fire other employees." *Id.*  "The scope of a corporate employee's discretion and authority under our test is therefore a question of fact for decision on a case-by-case basis." *Id.* at 567.

Given the California Supreme Court's clear guidance, district courts within the Ninth Circuit have denied summary judgment on punitive damages, finding that "[w]hether or not an employee qualifies as a 'managing agent' is not as simple as Defendants would lead the Court to believe." *DesRosiers v. Hartford*, 979 F. Supp. 2d 1036, 1053 (E.D. Cal. 2013); *see also McCullough v. Xerox Corp.*, No. 13-CV-04596-HSG, 2015 WL 5769620, at *12 (N.D. Cal. Oct. 2, 2015) ("Because Plaintiff's wrongful termination claim survives summary judgment, the Court finds it would be premature to dismiss her request for punitive damages."); *Larkin v. Home Depot, Inc.*, No. 13-CV-2868-LB, 2015 WL 1049716, at *3 (N.D. Cal. Mar. 9, 2015) ("[T]he question whether district-manager Cozy was a 'managing agent' in this case is also an issue for the jury."). At the time of the events giving rise to this suit, Lane was the Director of Business Operations for Aerotek's San Jose Office, and Simmons was the Human Resources Manager for the Northwest Region.  It is clear from the record that both had considerable responsibilities.  Whether either one exercised sufficient authority to qualify as a managing agent for purposes of § 3294(b) "requires a factual inquiry not suitable for summary judgment." *DesRosiers*, 979 F. Supp. 2d at 1053.

Aerotek's reliance on *Gelfo* and *Kelly-Zurian* is misplaced.  In both of those cases, the determination of the corporate employee's authority occurred after a trial.  *See Gelfo v. Lockheed Martin Corp.*, 140 Cal. App. 4th 34 (2006); *Kelly-Zurian v. Wohl Shoe Co.*, 22 Cal. App. 4th 397 (1994).  In *Gelfo*, the trial court granted a defense motion for directed verdict on the ground that Gelfo failed to present *any* evidence that a corporate managing agent was involved in rescinding his job offer.  The appellate court affirmed, holding that "where insufficient evidence supports a

verdict in the plaintiff's favor, no factual issue remains for the jury to decide." *Gelfo*, 140 Cal. App. 4th at 63.  In *Kelly-Zurian*, the appellate court affirmed the trial court's denial of the plaintiff's motion for a new trial on punitive damages, because the trial evidence was clear that the supervisor was not a managing agent.  *See Kelly-Zurian*, 22 Cal. App. 4th at 421.  The present case is in an entirely different procedural posture, and nothing in the cited cases suggests that their holdings may be extended to the summary judgment context.

Finally, Aerotek argues that it is entitled to summary judgment because Moses "cannot demonstrate with clear and convincing evidence that she suffered any acts of oppression, fraud, or malice."  Mot. at 25, ECF 35.  This argument fails in light of the record evidence that Lane retaliated against Moses for reporting against Ossai.

Aerotek's motion for summary judgment on Moses' claim for punitive damages is DENIED.

## IV.   ORDER

The motion for partial summary judgment is DENIED.


Dated: April 27, 2021

BETH LABSON FREEMAN
United States District Judge